Bret Knewtson, OSB 03355
Bret Knewtson, Esq
3000 NW Stucki PL STE 230-M
Hillsboro OR 97124
Telephone: (503) 846-1160
Facsimile: (503) 922-3181
bknewtson@yahoo.com

Mark G Passannante
Oregon State Bar ID Number 944035
markpassannante@msn.com
Broer& Passannante, P.S.
1001 SW Fifth Avenue, #1220
Portland, Oregon 97204
Phone: (503)294-0910
Fax: (503) 243-2717
        Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON (PORTLAND)

| | |
|---|---|
| KIRK NYBERG,<br>          Plaintiff,<br>     vs.<br>PORTFOLIO RECOVERY ASSOCIATES, LLC.,<br>          Defendant | Case No.: 15-cv-001175-PK<br><br>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br>(Oral Argument Requested) |

Pursuant to LR 7-1, the parties have conferred but are unable to resolve this motion without court assistance.

<u>MOTION</u>

Pursuant to FRCP 56 and LR 56.1, plaintiff moves for summary judgment on the issue of defendants' liability as alleged in the complaint, specifically:

**COUNT ONE**

1.     The attempt to collect a debt by asserting it was an account stated when that theory was not viable is a violation of at least one, if not more, provisions of the Fair Debt

Collection Practices Act, 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT TWO

2.    Asserting an account stated theory of law on a credit card debt in order to bypass the statute of limitations and other defenses to the debt that arise out of the contract between the plaintiff and Cap1 and which controls the credit card debt is a violation of at least one, if not more, provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT THREE

3.    Defendant's attempt to collect a debt, by filing a lawsuit on a debt that was barred by the applicable statute of limitations is a violation of at least one, if not more, provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT FOUR

**4.**    Defendant's overstating of the debt by reporting on plaintiff's credit report the amount owed was $977 when defendant sued for $834 and asserted that $834 was the true amount owed is a violation of at least one, if not more, provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(8), 1692e(10), 1692f, and 1692f(1).

Plaintiff also moves against PRA's Affirmative Defense of Bona Fide Error.

This motion is supported by exhibits 101 –117, Declaration of Nyberg and Knewtson, and the parties' stipulated facts.

## Contents

BACKGROUND ......................................................................................... 1

SUMMARY ............................................................................................... 5

I.   THERE WAS NO ACCOUNT STATED AS ALLEGED IN NYBERG I ................ 7

   A.   OREGON vs VIRGINIA LAW. ......................................................... 7

   1.   Oregon Applies the Law that Best Matches the Parties Expectations. .............. 9

   2.   PRA Claims Oregon Law Applies. ................................................ 11

II.   ACCOUNT STATED. ............................................................................ 11

   A.   Intent to State the Account Is Required. ........................................... 11

   B.   Account Stated Is Independent of The CHA .................................... 12

   C.   Periodic Statements Do Not Evidence An Attempt To State the Account. ....... 14

   1.   Statements Disclaim The New Balance As The Amount Owed. ..................... 14

   2.   Statements Instruct How Interest Will Accrue ................................... 15

   3.   Right to Dispute Language Contained In Every Statement Before and After The $834 Statement. ................................................................... 15

   4.   Fair Credit Billing Act Does Not Require Consumer to Dispute ....................... 16

III.   CHA DOES NOT PERMIT AN ACCOUNT STATED. ........................................ 20

   A.   Capital One Testified Sending Statements Is Not An Attempt To Form A New Agreement. ......................................................................... 20

   B.   Capital One Can Only Assign the Account Subject to the CHA. ................ 23

   C.   No Right To Contact Interest On Account Stated Claim. ..................... 24

D.    Account Governed by CHA Is the Only Interest Capital One Can Assign. ....... 27

IV.    ACCOUNT STATED CLAIM WAS TIME BARRED. ......................................... 28

V.    THE CONTRACT CLAIM WAS TIME BARRED. ................................................. 29

FDCPA VIOLATIONS .............................................................................................. 36

VI.    ELEMENTS OF FDCPA CLAIM. ...................................................................... 36

A.    Least Sophisticated Consumer Standard Applies to violations of 15 USC 1692e

and f ......................................................................................................................... 37

1.    Least Sophisticated Consumer Applies to 1692e. ............................................. 37

2.    Least Sophisticated Consumer Applies to 1692f. .............................................. 37

3.    Least Sophisticated Consumer Standard Can Apply To 15 USC 1692d, Both A

Substantive Question And A Jury Question ............................................................. 37

VII.    COUNT ONE ................................................................................................... 38

VIII.    COUNT TWO .................................................................................................. 41

A.    Account Stated Claim More Difficult to Defend Than Contract Claim. .............. 41

B.    Account Stated As Applied To A Credit Card Account Is Deceptive And Difficult

to Overcome. ............................................................................................................ 43

C.    Account Stated Opens the Door To The Incorrect Application Of Oregon Law

And Higher Judgment Interest. ................................................................................. 44

IX.    COUNT THREE ............................................................................................... 45

X.    COUNT FOUR ................................................................................................... 47

XI.    BONA FIDE ERROR DEFENSE ...................................................................... 48

CONCLUSION ....................................................................................................... 50

**Cases**

Ainslie v. Spolyar, 144 Or. App. 134, 146, 926 P.2d 822, 828 (1996) ........................... 28

Anderson v. Bank of Am., N.A., No. 3:13-cv-1660-AC, 2014 U.S. Dist. LEXIS 129536, at *28 (D. Or. July 29, 2014)................................................................................ 53

Anding v. Levy, 57 Miss. 51, 64 (1879) ........................................................... 44

Angelini v. Delaney, 156 Or. App. 293 (1998) ................................................... 8

Bank of Am. v. City &Cty. of S.F., 309 F.3d 551, 558 (9th Cir. 2002)........................... 20

Branner v. Branner'sAdm'r, 108 Va. 660, 662, 62 S.E. 952, 953 (1908) ...................... 14

Buchanan v. Higginbotham, 123 Va. 662, 667, 97 S.E. 340, 342 (1918). ..................... 21

CACV of Colo., LLC v. Stevens, 248 Or. App. 624, 629, 274 P.3d 859, 863 (2012) ....... 9

Camp v. Wilson, 97 Va. 265, 274, 33 S.E. 591, 594 (1899)........................................... 13

Capital One Bank v. Fort, 242 Ore. App. 166, 255 P.3d 508, 2011 ........................... 8, 11

Citibank (S.D.), N.A. v. Rhineer, 30 Pa. D. & C.5th 402, 419-20 (C.P. 2013)............... 24

Citibank v. Mincks, 135 S.W.3d 545, 559 (Mo. Ct. App. 2004)..................................... 19

Clark v. Capital Credit & Collection Servs., 460 F.3d 1162, 1171-72 (9th Cir. 2006) .... 51

Clark v. Capital Credit & Collection Servs., 460 F.3d 1162, 1178 (9th Cir. 2006) ......... 53

Crestar Bank NA v Cheevers, 744 A.2d 1043 ............................................................. 21

Cropp v. Interstate Distributor Co., 129 Or. App. 510, 516 (1994) ..................................... 8

DBI Architects, P.C. v. Am. Express Travel-Related Servs. Co., 363 U.S. App. D.C. 365, 370, 388 F.3d 886, 891 (2004)................................................................ 20

DeFoor v. Lamatta, 249 Or. 116, 119, 437 P.2d 107 (1968)............................................. 9

Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Asso., 281 Or. 533, 552, 577 P.2d 477, 489 (1978) ........................................................................................... 25

Dixon v. Hassell&Folkes, P.C., 283 Va. 456, 461, 723 S.E.2d 383, 385 (2012)...... 35, 36

Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010) ........................... 41

Eimco-BSP Service Co. v. Valley Inland Pacific Constructors, Inc.,626 F.2d 669, 671-
    673,1980 U.S. App. LEXIS 15174, 6-12(9th Cir. Or.1980) ..................................... 6, 14

Ellison v. Weintrob, 139 Va. 29, 31 (Va. 1924)............................................................... 31

Free v. Wilmar J. Helric Co., 70 Or. App. 40, 44, 688 P.2d 117, 120 (1984) ................... 20

Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1061-62 (9th Cir. 2011) ............. 41

Gray v. Am. Express Co., 240 U.S. App. D.C. 10, 743 F.2d 10, 18 (1984) ..................... 25

Halvorson v. Blue Mountain Prune Growers Coop., 188 Or. 661, 678, 214 P.2d 986, 993
    (1950)....................................................................................................................... 12

Harden v. Autovest, L.L.C., No. 1:15-cv-34, 2015 U.S. Dist. LEXIS 98584, at *8-9 (W.D.
    Mich. July 29, 2015) ................................................................................................. 44

Harden v. Autovest, L.L.C., No. 1:15-cv-34, 2016 U.S. Dist. LEXIS 164728, at *5 (W.D.
    Mich. Nov. 30, 2016) ................................................................................................. 55

Hepsen v. Resurgent Capital Servs., LP, 383 F. App'x 877, 883 (11th Cir. 2010), ....... 52

Hoyt v. Clarkson, 23 Or. 51, 55, 31 P. 198, 200 (1892).................................................. 19

In re Lewis, 517 B.R. 615, 621-22 (Bankr. E.D. Va. 2014)........................................... 35

Jayne v. Kane, 140 Va. 27, 124 S.E. 247, 250 (1924) .................................................. 50

JMMM PC Co. v. Stillwagon, 2011 Pa. Dist. &Cnty. Dec. LEXIS 24, *4-5 (Pa. County Ct.
    2011) ....................................................................................................................... 48

John J. Kassner& Co. v. New York, 46 N.Y.2d 544, 551, 415 N.Y.S.2d 785, 789, 389
    N.E.2d 99, 103 (1979) .............................................................................................. 39

Lewis v. Asset Acceptance, LLC, 2013 U.S. Dist. LEXIS 34128, *28 (D. Or. Jan. 9,
    2013)....................................................................................................................... 42

Lilenthal v. Kaufman, 239 Or. 1 (1964) ........................................................................... 8

Lyon v. Chase Bank United States, N.A., 656 F.3d 877, 880 (9th Cir. 2011). ............... 18

Magarity v. Shipman, 93 Va. 64, 65-66, 24 S.E. 466, 466-67 (1896) ............................ 31

McCollough v. Johnson, Rodenberg&Lauinger, 610 F. Supp. 2d 1247, 1257 (D. Mont. 2009) .................................................................................................................. 50

McGraw v. Traders' Nat'l Bank,64 W. Va. 509, 515-516,63 S.E. 398, 400,1908 (W. Va.1908) ......................................................................................................... 44

McNeel v. Baker, 6 W. Va. 153, 166 (1873) ................................................ 14

Mitchell v. Campbell, 14 Or. 454, 459, 13 P. 190, 192 (1886) ....................................... 39

Newport News, H. & O. P. Dev. Co. v. Newport N. S. R. Co., 97 Va. 19, 21-22, 32 S.E. 789, 790 (1899) ..................................................................................... 35

O'Byrne v. Portfolio Recovery Assocs. LLC, No. 12cv447 - IEG (NLS), 2013 U.S. Dist. LEXIS 42922, at *13 (S.D. Cal. Mar. 26, 2013) ........................................ 28

O'Neill v. Eberhard Co., 99 Or. 686, 695, 196 P. 391, 394 (1921) ................................ 12

Page v. Cushing, 80 Or. App. 690, 696, 724 P.2d 323, 327 (1985) .............................. 19

Piñon v. Bank of Am., NA (In re Late Fee & Over-Limit Fee Litig.), 741 F.3d 1022, 1025 (9th Cir. 2014) ................................................................................... 29

Portfolio Acquisitions, L.L.C. v. Feltman, 391 Ill. App. 3d 642, 652, (2009) ................... 35

Rivera v. Nedrich, 259 Va. 1, 4, 529 S.E.2d 310, 311 (1999) ........................................ 31

Robertson v. Wright, 58 Va. 534, 541 (1867) ................................................ 13

Rogers v. Strother, 68 Va. 417, 424 (1876) ........................................................... 39, 40

Slaey v. Harrington (In re Slaey), 539 B.R. 500, 503 (E.D. Va. 2015) .......................... 37

Slaey v. Harrington (In re Slaey), 539 B.R. 500, 510 (E.D. Va. 2015) .......................... 38

Soble v. Herman, 175 Va. 489, 496-498, 9 S.E.2d 459, 463 (1940) ............................ 37

Steinmetz v. Grennon, 106 Or. 625, 634, 212 P. 532, 535 (1923) ................................ 12

Sterrett v. Stoddard Lumber Co., 150 Or. 491, 504, 46 P.2d 1023, 1028 (1935) .......... 10

Tri-Cty. Ins., Inc. v. Marsh, 45 Or. App. 219, 223-24, 608 P.2d 190, 192 (1980) .......... 18

Woodfin Heating, Inc. v. Browning-Ferris Indus., 10 Va. Cir. 185, 186 (Cir. Ct. 1987) .. 37

Woodfin Heating, Inc. v. Browning-Ferris Indus., 10 Va. Cir. 185, 186 (Cir. Ct. 1987) . . 32

Woodfin Heating, Inc. v. Browning-Ferris Indus., 10 Va. Cir. 185, 187 (Cir. Ct. 1987) ... 6, 16, 24

**Statutes**

." Va. Code Ann. § 6.2- ................................................................................. 26, 28, 29

12 USC § 85 ......................................................................................................... 11

15 USC §1643(b) ................................................................................................. 21

15 USC §1666 ............................................................................. 20, 43, 45, 46

15 USC §1692e(5) .............................................................................................. 41

15 USC 1666, et seq ........................................................................................... 18

15 USC 1692 ......................................................................... 40, 49, 52

15 USC 1692d ............................................................................................... iv, 41

15 USC 1692e(10) ............................................................................................. 41

15 USCS § 1637(b) .......................................................................................... 22

as Va. Code Ann. § 6.2- ........................................................... 26, 27, 29

ORS 12.080 ................................................................................................. 8, 39

ORS 12.110(1) ...................................................................................................... 9

ORS 12.410 ...................................................................................................... 33

ORS 12.410-480 .............................................................................................. 34

ORS 82.010 ................................................................................. 28, 29, 49

Va. Code Ann. § 6.2-301 ............................................................................... 29

Va. Code Ann. § 6.2-302 ............................................................................... 49

Va. Code Ann. § 6.2-312 ............................................................................... 29

Va. Code Ann. § 6.2-313 .................................................................. 26, 29

Va. Code Ann. § 6.2-434 ................................................................................ 11

Va. Code Ann. § 8.01-229 .................................................................. 32, 37, 51

Va. Code Ann. § 8.01-230 ............................................................................ 31

Va. Code Ann. § 8.01-232 ................................................................. 34, 36, 38, 39

**Other Authorities**

Restatement Contracts, Second § 188 ............................................................. 9

Restatement, Second, Contracts § 19: ............................................................ 18

**Regulations**

12 CFR § 1026.6(b)(2) .................................................................................. 27

12 CFR § 226.5 ............................................................................................ 27

12 CFR 226.5 ............................................................................................... 22

12 CFR 226.5(c) ........................................................................................... 23

## BACKGROUND

Capital One's records reflect that Kirk Nyberg opened the Capital One Bank (USA) N.A (Capital One) account ending in 3245 on August 13, 2004. Exhibit 101. That document is the only document produced by Capital One with information about the opening of the account. Exhibit 102 pg 5 (Depo pg 14, ln 1-25). Capital One does not have any of the account opening disclosures or the application. The credit line was $200. Exhibit 112, pg 1. That account was subject to at least three cardholder agreements (CHA). Stipulated Facts #5.

Nyberg used the card for personal and household uses. Declaration of Nyberg. Stipulated Fact #2. He made his last payment on July 19, 2010 of $20. Exhibit 112, pg 4. The total paid on the account was $1,306.13. Nyberg used the account to charge a total of $1,054.41. Declaration Knewtson, ¶ 2. The last charge was made on August 22, 2010.Exhibit 112, pg 8. As of August 26, 2010 he owed $513.76. Exhibit 112, pg 8. Six statements later he owed $834.25. Exhibit 112, pg 26.That statement would have been sent shortly after February 26, 2011 as that is the last date in the billing cycle. Exhibit 112, pg 26. That is the statement PRA claims formed an account stated thereby fixing the debt in the amount of $834.25 in a new and binding agreement. For identification purposes plaintiff refers to that statement as the $834 statement. The six statements prior to the $834 statement accrued interest at the rate of 22-25% and included late charges pursuant to a cardholder agreement. Exhibit 112. Statements continued to be sent to Nyberg by Capital One until at least August of 2013. Exhibit 112, pg 47.The statements sent after the $834 statement showed the accrual of interest at the rate of 19.65% on a balance of $833.72 up to January 12, 2012. Exhibit 112, pg 35. The last statement provided by Capital One, in response to the subpoena, was sent sometime in August of 2013 and has a balance of $976.57. Exhibit 112, pg 47. All the statements

had the same disclaimer that the demand for payment was not a payoff amount and the cardholder should call for a payoff amount along with an explanation of how the interest was charged as required by federal law. Nyberg has no recollection of what statements he actually received. Declaration of Nyberg, ¶ 2.

In sending statements, neither Capital One nor Nyberg intended to form a new agreement with each other arising out of any particular account or settling the account at a particular amount. Exhibit 102, pg 7-8 (depo pg 24, ln 8 – pg 25, ln 1-7). Capital One made it clear that those statements are intended to be governed by the CHA. Exhibit 102, pg 7 (depo pg 24, ln 2-7).

**The Purchase Agreement**

In December of 2012 PRA and Capital One sold a portfolio of defaulted accounts to PRA via a forward flow agreement (Purchase Agreement) that ran to October 16, 2013. Exhibit 111 (Bill of Sale). The Purchase Agreement identified that Capital One was selling defaulted credit card Accounts that were governed by Virginia and federal law. Exhibit 113, pg 5 (j). It defines the following pertinent terms:

**"Account(s)"** means the charged-off credit card accounts identified on a Sale File. Exhibit 113, pg 1.

**"Account Document"** means any application, billing statement or other document used to show financial responsibility for an Account, including any magnetic or electronic forms thereof. Exhibit 113, pg 1.

Capital One made the following relevant representations and warranties:

3.4 **Accounts**. As of each Cutoff Date, with respect to each Account sold to Buyer on the corresponding Closing Date:

(d) The Account has been serviced by Seller in material compliance with all applicable state and federal laws, including, without limitation, the Fair Credit Reporting Act and the Gramm-Leach-Bliley Act;

(e) The Account has not been settled or paid in full.

(h) To Seller's actual knowledge, the Account is a valid and binding obligation of the Borrower;

(i) The terms and conditions established by Seller with respect to such Account provided for interest to accrue on the Account prior to charge-off;

(j) The terms and conditions established by Seller with respect to the Account provide that the Account will be governed by applicable federal law and the laws of the Commonwealth of Virginia;

The Purchase Agreement also required PRA to acknowledge that some of the accounts may have been time barred. Exhibit 113, pg 6, 4.2, last sentence.

**The Collection Attempt**

PRA claims the Nyberg account was transferred as part of that sale. The only document related to Nyberg's account that was transferred at the time of sale was the "redacted sale file." Exhibit 114. PRA did not have the account statements when it purchased the portfolio. Exhibit 116, pg 3 (depo pg 25, ln 19-22).PRA was unable to identify what documents were transferred at the time of the sale to establish the terms and conditions for the accounts. Exhibit 116, pg 4, (depo pg 40, ln 4-11). The redacted sale file identified the current total balance as $976.57 and the principle at charge off of $469.29.

PRA immediately began reporting to the credit reporting agencies that Nyberg owed $977. Exhibit 103. Declaration of Nyberg. PRA also attempted to collect the debt from Nyberg by sending him dunning letters starting on or around October 29, 2013.

That letter demanded $976.57 and was not reviewed by a lawyer. Exhibit 104, pg 1-2. On January 23, 2014, PRA informed Nyberg the account was being transferred to "Litigation Department" and again demanded $976.57. Exhibit 104, pg 3-4. Around February 24, 2014 PRA's litigation department sent another dun, also not reviewed by a lawyer, and also demanding $976.57. Exhibit 104, pg 5-6.

On June 19, 2014 PRA obtained the charge-off statement and scanned it into its system. Exhibit 105,pg 5. That exhibit is the only record of when PRA obtained any document related to Nyberg's account. PRA produced it after plaintiff deposed the corporate designee and Dale Nordyke, Oregon counsel for PRA. Nordyke Depo pg 73, ln 14-25. It shows that only the statement was available to PRA when it drafted the complaint and Nordyke approved the lawsuit. That record contradicts Nordyke's recollection of the documents he reviewed.

Nordyke testified that he reviewed the statement, the bill of sale (Exhibit 111), and the affidavit of assignment (Exhibit 110) when the collection lawsuit was filed in Washington County on June 25, 2014, case # C143752CV (Nyberg I). Nordyke reviewed those documents in order to determine that the account stated claim was proper. Exhibit 115, pg 5, (depo pg 13 ln 25, to pg 14, ln 1-4). The contradiction between the collection notes which show only the $834 statement as scanned and Nordyke's recollection that multiple statements were reviewed raises a question of fact that relates to PRA's affirmative defenses.

PRA served the lawsuit on Nyberg. Nyberg retained Knewtson and notified PRA that he intended to answer the complaint. PRA never requested an answer be filed. On November 25, 2014 Washington County Circuit Court dismissed for failure to prosecute. Exhibit 106. A second lawsuit for the same debt was filed on May 7, 2015 (Nyberg II) that is not at issue in this case other than it evidences PRA's purpose in suing for an

account stated. For example Exhibit 108 is PRA's MSJ filed in Nyberg II which Nordyke identified as the document that best explains PRA's understanding of why the account stated claim was viable. Exhibit 15, pg 6 (depo pg 35, ln 8-25, pg 36, ln 1-22).

After Nyberg I was filed PRA obtained an affidavit from Capital One dated November 14, 2014 that asserted Nyberg owed $976.57 which is also the amount listed in the last statement provided by Capital One, the May 26-Aug 25, 2013 statement. Exhibit 112, pg 47-48.This lawsuit was filed on June 25, 2015.

**SUMMARY**

The statements make it clear that Capital One was relying on the CHA as they show the charging of contractual interest from when the account was opened up to January 12, 2012 at the rate of 19.65% to 25.95%.For example, Exhibit 112, pg 35 (19.65%), pg 19 (25.96%).

It is also clear from the purchase agreement that what was sold to PRA was a credit card account that was subject to terms and conditions. The CHA identified that the "Account" was subject to federal and Virginia law. The other pertinent term in the CHA was the assignment clause which asserts that the Agreement is binding on and inures to the benefit of Capital One's assigns and Nyberg. Exhibit 3, pg 5 "Assignment."

  PRA cannot sue for account stated. It certainly cannot assert that Oregon law applies because what it bought was governed by the CHA which requires application of Virginia law. That is reinforced by the Purchase Agreement which puts PRA on notice that Virginia law governs the credit card Accounts that it is buying from Capital One. Just as Capital One cannot assign any interest or right to PRA outside of the Account, PRA cannot later devise an interest or a right that was not assigned to it by the Purchase Agreement. There is no authority that identifies that an assignment of a debt expands the rights available to

the assignee or creates new rights that exceed those rights of the assignor. All Capital

One sold to PRA was a credit card account governed by a CHA. Not a license to make up

new claims.

   If an account stated existed then it replaces the parties "Account."

> As such, an account stated is itself an independent contract that is enforceable
> without regard to the underlying transactions on which it is based.
> Eimco-BSP Service Co. v. Valley Inland Pacific Constructors, Inc.,626 F.2d 669,
> 671-673,1980 U.S. App. LEXIS 15174, 6-12 (9th Cir. Or.1980) citing to
> *Meridianal Co. v. Moeck*, 121 Or. 133, 253 P. 525 (1927).

It is independent of the Account because if it exists that is the sole agreement between the

parties. There cannot be two independent agreements for the same account. It would act

as an affirmative defense to a contract claim. For example PRA demanded $977 and

reported that as owed on Nyberg's credit report. If Nyberg legally owed that then there

clearly was no agreement between Capital One and Nyberg that he owed $834. There can

be only one agreement that supports his liability for the amount owed. PRA cannot explain

how 19.65% interest could accrue on an account stated obligation under Oregon law as it

asserted in the state court collection actions. Exhibit 107, pg 2 ¶ 6. That rate of interest is

only possible if the CHA was the agreement between the parties.

> Likewise, any finance charges resulting from these principal sums are also
> barred by the statute of limitations. The Court additionally finds that the 18
> percent per year finance charges which were placed on the account are
> improper. The plaintiff has produced no agreement between the parties which
> established the rate of interest at 18 percent per annum. n absence of such
> agreement, the legal rate of interest applies to any sums on open account.
> Woodfin Heating, Inc. v. Browning-Ferris Indus., 10 Va. Cir. 185, 187 (Cir. Ct.
> 1987)

   What PRA is doing is illegal, unfair, deceptive and abusive. The fees Nyberg incurred in

defending Nyberg II exceeded $50,000 because unraveling PRA's account stated scheme

is nuanced and complicated. It puts the burden on the consumer to rebut the claim. Most

consumers have no idea what an account stated is. PRA obviously struggles to prove breach of contract claims and while it won't admit it a jury could easily infer that the account stated claim is an attempt to avoid the complications of proving a modern CHA that constantly changes and requires a third party witness (Capital One) to establish. Regardless of why PRA relies on the account stated theory it was a false claim and was time barred. Both of which are clear violations of the FDCPA.

## I.      THERE WAS NO ACCOUNT STATED AS ALLEGED IN NYBERG I

PRA's claim that an account stated was created by the sending of the March 2011 $834 statement is false. That statement was sent pursuant to the CHA and evidences the continuation of business between Capital One and Nyberg. It was not a final billing statement nor an attempt to form a new agreement with Nyberg. The statement itself says as much. Exhibit 112, pg 27 (Is the "Payment Due" a Payoff Amount). Capital One and Nyberg both said the same thing. Declaration of Nyberg, pg ¶ 1-3.

Nordyke identified that his motion for summary judgment filed in the Nyberg II collection case was the best evidence of PRA's support for the account stated claim. It states in sum that Capital One sent "repeated billing statements and a final accounting showing the final balance at the time the account was charged off" ($834) and that Nyberg did not object within a reasonable period of time. Exhibit 108,pg 12, ln 4-16.PRA identified 60 days as the reasonable amount of time in which a cardholder should object. Exhibit 108, pg 11, ln 11-18. The Nyberg II complaint (Exhibit 117, pg 1 ¶ 3) made the same false statement in the Nyberg I complaint. Exhibit 107, pg 2 ¶ 3.

### A.  OREGON vs VIRGINIA LAW.

An initial determination must be made to identify the applicable law. Nyberg is an Oregon resident and Capital One is a Virginia chartered bank. Exhibit 9. On the issue of

account stated Oregon and Virginia law are more or less the same, with the exception of

the statute of limitations, and interest rates that are materially different between Oregon

and Virginia.

If the CHA applied then the choice of law analysis would be simple. Oregon would

enforce the CHA election of Virginia law. Capital One Bank v. Fort, 242 Ore. App. 166, 255

P.3d 508, 2011. Since the CHA does not govern the account stated claim Oregon will

decide as a matter of procedure whose law applies if there is a conflict of law between the

two proposed jurisdictions. Lilenthal v. Kaufman, 239 Or. 1 (1964). The statute of

limitations for an account stated is 3 years in Virginia. Va. Code Ann. §8.01-246(4).

Oregon's is six years. ORS 12.080(1). If Virginia law applies, PRA's claim is time barred.

See Angelini v. Delaney, 156 Or. App. 293 (1998) (acknowledging that differing limitations

periods could satisfy the requirement for applying a different states laws, but that in the

case at bar the plaintiff's claims were barred under either statute of limitations).See also

Cropp v. Interstate Distributor Co., 129 Or. App. 510, 516 (1994) ("For there to be a choice

of law issue, there must be a choice to make. Oregon law and another state's law must be

different *on the disputed issue)*. DeFoor v. Lamatta, 249 Or. 116, 119, 437 P.2d 107

(1968). ("Here, there are two different laws on the disputed issue of whether plaintiffs'

personal injury claims were timely filed. In Oregon, plaintiffs had to file their action within

two years of December 18, 1990. ORS 12.110(1).

Even if Oregon and Virginia are materially the same on the issue of the account stated

Oregon requires a determination if other aspects of the claim give rise to material

differences between the jurisdictions. CACV of Colo., LLC v. Stevens, 248 Or. App. 624,

629, 274 P.3d 859, 863 (2012) applying Delaware law pursuant to contract choice of

law when no material difference between Oregon and Delaware law on breach of the

agreement but difference on the limitation period and attorney fees.

### 1.  Oregon Applies the Law that Best Matches the Parties Expectations.

Absent a contractual choice of law, the parties to a contract will be subject to the law

of the state whose laws the parties expected to control their transactions. Restatement

Contracts, Second § 188[1]. That philosophy was applied in <u>Sterrett v. Stoddard Lumber

Co.</u>, 150 Or. 491, 504, 46 P.2d 1023, 1028 (1935) and is good law. The Restatement

identifies five elements to consider in deciding whose law applies;

1. the place of contracting,
2. the place of negotiation of the contract,
3. the place of performance,
4. the location of the subject matter of the contract,
5. and the domicile, residence, nationality, place of incorporation and place of business of the parties.
   <u>Restatement Contracts, Second § 188</u>

**Place of contracting:** The place of contracting is Virginia. "We make decisions to grant

credit and issue a Card from our offices in Virginia. Exhibit 3, pg 5. (The Law That

Applies To Your Agreement).

**Place of negotiation:** Capital One's agreement is a contract of adhesion so there was

no negotiation of the contract.

**The place of performance**: Virginia, as that is where the credit is granted and

presumably the payment to the merchants who accept the card comes from Virginia,

---

[1]ORS 15.300-360 ordinarily applies to determine the choice of law, in the absence of an effective choice of law however ORS 15.300 provides that Chapter 15 does not apply to any contract in which one of the parties is a financial institution, as defined by 15 U.S.C. 6827, as in effect on January 1, 2002. [2001 c.164 §2]. Capital One Bank (USA) NA is within that definition and therefore ORS Chapter 15 is not applicable. <u>Capital One Bank v John Fort</u>, *Supra,* 170 (2011).

although there is no evidence of the latter in the record. The subject matter of the contract is the granting of credit and charging of finance fees, which would be in Virginia.

**The place of business and incorporation, residence and domicile:** Capital One is located in Virginia. Exhibit 109. That is the most compelling reason to apply Virginia law because Capital One is a National Bank and does business in all fifty states. In order to engage in the "consumer credit business" it is permitted to rely on one set of laws (in this case Virginia) to control the legality of its transactions in all the states. 12 USC § 85. See also, Piñon v. Bank of Am., NA (In re Late Fee & Over-Limit Fee Litig.), 741 F.3d 1022, 1025 (9th Cir. 2014) and see generally Capital One Bank v. Fort, 242 Ore. App. 166, 255 P.3d 508, 2011, applying Virginia law to Capital One account except when Virginia law contradicts a fundamental policy of Oregon. Virginia makes it clear that Virginia banks dealings are subject to Virginia law. Va. Code Ann. § 6.2-434[2].

Nyberg's location does not bear any significant consideration for determining the substantive law that governs the account or the account stated. Oregon would have little reason to apply its law to the account as compared to Virginia. The statement relied upon by PRA was sent to Oregon but not for the purpose PRA claimed; stating the account.

**The location of payment**: Checks are to be sent to a location in California according the statements.

---

[2]An open-end credit plan, as defined in § 6.2-300, between a bank or savings institution and an obligor, or any plan which permits an obligor to avail himself of the credit so established, shall be governed solely by federal law, and by the laws of the Commonwealth, unless otherwise expressly agreed in writing by the parties. Va. Code Ann. § 6.2-434.

Virginia law applies to the account stated claim because that is what the parties expected and it bears a reasonable relationship to the parties account.

### 2. PRA Claims Oregon Law Applies.

Nordyke testified that he did an extensive analysis of the case law and statutes and determined that Oregon law applies to a Capital One account stated claim. Exhibit 115, pg 6 (depo pg 35, ln 7-25).He did not keep any written record of that research and analysis. He identified the Points and Authorities in Support of PRA's Motion for Summary Judgment in Nyberg II as representing his analysis of why the account stated claim was proper. Exhibit 115, pg 6 (depo pg 36, ln 17-22). That document does not explain why Oregon law applies to the account stated claim. The closest it gets is to argue that the CHA does not apply but if it did then it requires application of Oregon's statute of limitations.

## II. ACCOUNT STATED

### A. Intent to State the Account Is Required.

Account stated is a contract and all contracts require an objective meeting of the minds. O'Neill v. Eberhard Co., 99 Or. 686, 695, 196 P. 391, 394 (1921) ("To constitute an account stated, each party must understand the transaction as a final adjustment of the respective demands between them taken into consideration in the accounting." also cited for the same principle by Halvorson v. Blue Mountain Prune Growers Coop., 188 Or. 661, 678, 214 P.2d 986, 993 (1950). Steinmetz v. Grennon, 106 Or. 625, 634, 212 P. 532, 535 (1923),"Since an account stated is an agreement, it, like any other agreement, cannot be said to exist unless the minds of the parties have met." Camp v. Wilson, 97 Va. 265, 274, 33 S.E. 591, 594 (1899).

> The court is of opinion that the mere rendering of an account by one party to another, is not sufficient to make it an account stated. For that purpose there [**13] must either be an actual statement and adjustment of the account by the parties by going over the items together and striking the balance, or an admission by one party of the correctness of the balance struck by the other, or some other evidence to show that the party who is sought to be charged has, by his language or conduct, admitted the correctness of the account.
> Robertson v. Wright, 58 Va. 534, 541 (1867)

To perceive silence as a meeting of the minds there has to be an expectation that silence is agreement. That silence is not independent of the creditor's intent, it is a confirmation of the creditor's intent in reaching a final balance after the parties' dealings have ended. There was no evidence that Capital One and Nyberg intended to create the agreement alleged by PRA. All the evidence indicates Capital One was issuing statements as part of its CHA. Capital One never intended to form a new agreement with Nyberg when it sent statements. Exhibit 102, 7-8, (depo pg 24, ln 25, pg 25 ln 1-7)..
Because Capital One never intended the statements it sent to form a new agreement independent of the original agreement, Nyberg's silence could not create a meeting of the minds between the two parties.

## B.  Account Stated Is Independent of The CHA

The CHA is not enforceable if the parties have reached a new binding agreement that fixes the amount due.

> As such, an account stated is itself an independent contract that is enforceable without regard to the underlying transactions on which it is based.
> Eimco-BSP Service Co. v. Valley Inland Pacific Constructors, Inc.,626 F.2d 669, 671-673,1980 U.S. App. LEXIS 15174, 6-12(9th Cir. Or.1980) citing to *Meridianal Co. v. Moeck*, 121 Or. 133, 253 P. 525 (1927).

PRA can only sue for an account stated if it was a mutual binding agreement between Capital One and Nyberg. If it was binding then Capital One relinquished its rights under the CHA and agreed to a fixed sum due. There cannot be two binding agreements. It

would also be true that Nyberg could have stated the account by agreeing to the

balance of any of the statements once he was no longer using the account. If that is true

then PRA's account stated claim would be available to Nyberg as an affirmative defense

had PRA sued for breach of contract.

> A stated account, and a settled [**22] account, may also be setup by way
> of defense in an answer. Endo *vs*.Coleham, 1 Younge R. 306. So also
> Adams Equity, top page 485. "If, therefore, there has been an account
> stated between the parties, it may be pleaded as a bar to both discovery
> and relief, or may be set by answer as a bar to relief." So also Story's
> Equity, § 523, and the cases there cited. But this doctrine is well
> established, and needs no further proof.
> McNeel v. Baker, 6 W. Va. 153, 166 (1873)

That case is cited for the same proposition by Virginia. Branner v. Branner'sAdm'r, 108

Va. 660, 662, 62 S.E. 952, 953 (1908). The evidence does not support the conclusion

that Nyberg or Capital One could state the account in the manner described by PRA

and avoid the CHA. If Oregon were to agree with PRA it would defeat any credit card

claim based on a CHA. The two claims cannot coexist for the creditor to use based

upon a differing statute of limitations. It is the difference between identifying a different

legal theory and making up facts. An account stated is not a legal theory. It is a factual

assertion and must be supported by some fact that there was meeting of the minds

between Capital One and Nyberg to form a new agreement setting the amount of

Nyberg's obligation to Capital One. PRA was in possession of no facts to support this

claim and, to the contrary, was provided facts that the Account was subject to Virginia

Law and a cardholder agreement (Exhibit 113, pg 5 ((j)) as well as the fact that Capital

One never intended the amount due in any one statement to be a final amount due

between it and Nyberg. For example the last statement sent by Capital One disclaims

the amount due as a not a payoff amount. Exhibit 112, pg 48.

### C.  Periodic Statements Do Not Evidence An Attempt To State the Account.

### 1.  Statements Disclaim The New Balance As The Amount Owed.

The $834 statement, relied upon by PRA as the seminal statement creating the account stated, was one of many statements all sent to the cardholder as required by federal law. Each statement disclaims that the number reflected as owed is not a final balance. The earlier statements contain that language in the paragraph 1(b):

> **Accruing Finance Charge:** . . . This means that you may still owe finance charges, even if you pay the entire New Balance indicated on the front of your statement by the next statement closing date, but did not do so the previous month.
> Exhibit 112, pg 2.

That language was used until February 2010. After that date the same language was used but under the heading **"How is the Interest Charge applied?"** The same sentence was used. "This means that you may still owe finance charges, even if you pay the entire New Balance indicated on the front of your statement by the next statement closing date, but did not do so the previous month." Exhibit 112, pg 5. Likely that change was a result of the Credit Card Accountability Responsibility and Disclosure Act of 2009 which went into effect on February 22, 2010[3].

The language changed again with the March 2011 $834 statement and even more explicitly denied that the balance owed amount was a payoff amount:

> **Is the "Payment Due" a <u>Payoff Amount</u>?** No. All stated amounts are owed on the date of the statement. However, because interest, late charges and other charges might change from day to day as provided in your customer agreement, the amount due on the day you pay may be larger. . . . Please call the number on the front of the statement for an exact payoff amount.
> Exhibit 112, pg 27.

---

[3]https://www.ftc.gov/sites/default/files/documents/statutes/credit-card-accountability-responsibility-and-disclosure-act-2009-credit-card-act/credit-card-pub-l-111-24_0.pdf

The disclaimer appears on the front page as well of the $834 statement under
IMPORTANT ACCOUNT UPDATES
Your full balance is due. Any payment you make will reduce your balance and help
payoff your debt faster. The amount you owe may differ if you've entered into a separate
payment agreement.
Exhibit 112, pg 26. (right side, below billing cycle dates).

That language and the "Is the "Payment Due" language remained in place for the

remainder of the statements in the record which were sent until September 2013.

### 2.  Statements Instruct How Interest Will Accrue

If the account was stated in a fixed sum then the parties would have no contractual

rights under the CHA to charge interest. Woodfin Heating, Inc. v. Browning-Ferris Indus.,

10 Va. Cir. 185, 187 (Cir. Ct. 1987).  Yet, the $834 statement and all those before and

after it explain how various contractual charges are calculated. They also identify the right

to charge "Addition Fees," like late or returned payment, over-limit, actual collection

expenses, attorney's fees and court costs. Exhibit 112, pg 27 (2nd ¶ from bottom on

left).The cardholder objectively would not interpret any of these statements as an attempt

to declare the amount owed in a fixed sum.

### 3.  Right to Dispute Language Contained In Every Statement Before and After
###     The $834 Statement.

If the account was stated there would not be any further right to dispute the balance.

Each statement contains a Billing Rights Summary that identifies a right to dispute the

statement. Even the last one. Exhibit 112, pg 48. Objectively it is clear that Capital One is

complying with the CHA and federal law when it sends statements. The statements cannot

be reconciled with the idea that the parties intentionally and mutually established an

accounting after their dealings were concluded and stated the balance in a binding and

fixed sum. If that was the case then PRA needs to explain why Capital One kept sending

statements that contradict that stated account. It does not make sense to continue sending

statements for over a year if the account was stated and the parties had factually agreed

upon a final balance. Each statement identified CHA rights and responsibilities that would

have been relinquished by the parties if they understood the account had been stated in a

fixed sum and was no longer subject to the CHA. None of the briefing done by PRA in

Nyberg II explains how Capital One stated the account. Exhibit 108, pg 12 ln 4-16. Capital

One specifically disclaimed in deposition that they intended to form a new agreement.

> **25· · · · · · ·Q.· · Does Capital One when issuing a monthly**
>
> 1   **statement intend that statement to form a new agreement**
> 2   **with the cardholder?**
> 3          MR. TOPOR: Objection.  Vague.  Calls for a
> 4       legal conclusion.
> 5   BY MR. PASSANNANTE:
> 6          **Q.    Go ahead and answer.**
> 7          A.    No.

Exhibit 102, 7-8, (depo pg 24, ln 25, pg 25 ln 1-7).

The undisputed facts are that the statement PRA relied upon as the final statement

"stating the account" was not intended to be the final statement between the parties nor

was it intended to be a settlement of Nyberg's account.

### 4.  Fair Credit Billing Act Does Not Require Consumer to Dispute

An account stated can be implied from a failure to dispute if the circumstances make

such an inference reasonable.

> The thrust of this theory is that an agreement may be inferred from the failure of a
> debtor to object to an accounting he receives from a creditor. Although this inference
> is available, it remains a fact issue as to whether the debtor agreed to pay the
> amount stated in the accounting. *See Cooley v. Roman, supra.*
> Tri-Cty. Ins., Inc. v. Marsh, 45 Or. App. 219, 223-24, 608 P.2d 190, 192 (1980)

Same, Restatement, Second, Contracts § 19:

(1) The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act.

(2) The conduct of a party is not effective as manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.

(3) The conduct of a party may manifest assent even though he does not in fact assent. In such cases a resulting contract may be voidable because of fraud, duress, mistake, or other invalidating cause.

But this is a highly regulated consumer financing transaction that is subject to 15 USC 1666, et seq (FCBA).

> Congress enacted the FCBA in order to regulate billing disputes involving "open end consumer credit plans." *See* 15 U.S.C. § 1666; *Gray v. Am. Express Co*., 743 F.2d 10, 13, 240 U.S. App. D.C. 10 (D.C. Cir. 1984) ("The Fair Credit Billing Act seeks to prescribe an orderly procedure for identifying and resolving disputes between a cardholder and a card issuer as to the amount due at any given time."). If a credit-card holder sends a written notice disputing a charge within sixty days of receiving a bill, the FCBA requires a credit-card issuer to acknowledge the dispute within thirty days, investigate the matter, and provide a written explanation of its decision within ninety days. 15 U.S.C. § 1666(a); *Am. Express Co. v. Koerner, 452 U.S*. 233, 234-37, 101 S. Ct. 2281, 68 L. Ed. 2d 803 (1981).
> <u>Lyon v. Chase Bank United States, N.A.</u>, 656 F.3d 877, 880 (9th Cir. 2011).

The bottom line is that the consumer does not have to dispute. Disputing only invokes the restrictions on the credit issuer as detailed in the FCBA. If the consumer does not dispute, she may do so at a later time.

> If we were [**36] to accept Citibank's argument, it would mean that a consumer who failed to utilize this billing error statute - through ignorance, inadvertence, or purposeful action - would completely forfeit his right to contest the debt owed in a collection lawsuit. The creditor, on the other hand, could knowingly and willfully ignore its responsibilities under this statute and only be penalized a maximum of $ 50. In our view, this interpretation of the statute leads to an absurd result and turns topsy-turvy our duty to liberally construe the Truth-in-Lending-Act in a consumer's favor. Again, we decline to do so.
> <u>Citibank v. Mincks</u>, 135 S.W.3d 545, 559 (Mo. Ct. App. 2004)

That is the only identifiable custom of how disputes on an account are resolved between a credit issuer and cardholder. Implying silence is an agreement that fixes the account in a

stated sum requires PRA to identify a duty to dispute that contradicts the FCBA remedial

protections. Importantly, PRA's claim of account stated prohibits the consumer protection

that the FCBA was designed to promote. Once stated, a creditor no longer has to prove

the underlying transactions. Instead, it is the debtor that must raise those issues and bear

the burden of proof thereon. Hoyt v. Clarkson, 23 Or. 51, 55, 31 P. 198, 200 (1892).

> An acceptance by silence can only arise when there is a duty to speak.
> *Boehnlein v. Ansco, Inc.*, 61 Or App 389, 394, 657 P2d 702, rev den 294 Or 682
> (1983). There is nothing to show that plaintiff had such a duty.
> Page v. Cushing, 80 Or. App. 690, 696, 724 P.2d 323, 327 (1985)

See also, generally, Free v. Wilmar J. Helric Co., 70 Or. App. 40, 44, 688 P.2d 117, 120

(1984). Neither the FCBA nor the CHA, require a cardholder to speak.

> Indeed, in *Crestar Bank, N.A. v. Cheevers*, 744 A.2d 1043 (D.C. 2000), the District
> of Columbia Court of Appeals held that a cardholder's "failure to object to the
> [disputed] charges within a reasonable time … [did not] constitute ratification and
> acceptance of those charges." Id. at 1048
> DBI Architects, P.C. v. Am. Express Travel-Related Servs. Co., 363 U.S. App.
> D.C. 365, 370, 388 F.3d 886, 891 (2004)

This makes PRA's allegation in paragraph 3 of their claim that "Defendant did not object to

the Account within the time stated prescribed by 15 USC §1666. Original Creditor and

Defendant thereby established a stated balance of the account." Exhibit 107, pg. 2. a

materially false and misleading statement. Material in the sense that PRA is telling the

consumer exactly the opposite of what the law provides and has, though their allegation,

turn a consumer protection statute as a new vehicle for a card issuer to recover outside

the limits of their cardholder agreement or their duties under TILA. An absurd result not

contemplated by Congress when enacting 15 USC §1666.

    The statutory scheme about how disputes are handled pre-empts the common law

account stated. Bank of Am. v. City &Cty. of S.F., 309 F.3d 551, 558 (9th Cir. 2002)

(Identifying three ways federal law preempts state law, express, pervasive, implied

preemption where there is conflict.). Here the FCBA is in direct conflict with an account stated claim. The CHA identifies that federal law applies and this is exactly the federal law that applies to any attempt to state the account that is implied by a failure to dispute a statement. S*ee also*., Crestar Bank NA v Cheevers, 744 A.2d 1043 (no presumption of authorization follows from cardholder's failure to object to account statements, because to do so would impermissibly shift burden of proof under Section 1643).15 USC §1643(b) requires the holder of the account to prove liability under the credit account.

> Burden of proof. In any action by a card issuer to enforce liability for the use of a credit card, the burden of proof is upon the card issuer to show that the use was authorized or, if the use was unauthorized, then the burden of proof is upon the card issuer to show that the conditions of liability for the unauthorized use of a credit card, as set forth in subsection (a), have been met.
> 15 USCS § 1643(b)

PRA's theory, even if viable, would put the burden of proof on Nyberg to impeach the account because the inference of assent by silence created under an account stated puts the burden on the cardholder to contest any specific underlying charges in response to the claim. Under an account stated claim the card issuer is relieved of its burden of proving that specific use of the card was authorized and, just as importantly, shifts the burden of proof onto the cardholder to specifically contest any charges in their answer to the complaint.

> In *Goldsmith* v.*Latz*, 96 Va. 680, 32 S.E. 483, it was held that where an account is rendered and is retained by the party to whom it is rendered, without objection, there arises a strong presumption of its correctness, and throws the burden of proving error therein upon the party who alleges such errors.
> Buchanan v. Higginbotham, 123 Va. 662, 667, 97 S.E. 340, 342 (1918).

### III.    CHA DOES NOT PERMIT AN ACCOUNT STATED.

### A.  Capital One Testified Sending Statements Is Not An Attempt To Form A New Agreement.

PRA has fabricated the account stated claim. PRA is anticipated to argue that an account stated claim is merely a theory of liability. PRA misses the point that an account stated is not merely a theory of liability but a distinct claim. It is a claim that must be supported by facts and PRA had no evidence in its possession that would lead any reasonable collector to believe that Capital One and Nyberg stated an account with the $834 statement. The formation of contracts is an objective process. Objectively PRA cannot explain how the $834 statement was anything other than a communication required by the CHA and federal law[4]. Capital One agrees and states that it did not intend to form a new agreement when it sent a statement.

> ·Q.· · Now, you referenced cardholder
> 17· ·statements, and it looks to me like you produced all the
> 18· ·cardholder -- the statements to Mr. Nyberg in response
> 19· ·to the subpoena; is that correct?
> 20· · · · · · ·A.· · Correct.
> 21· · · · · · ·Q.· · Why does Capital One send account
> 22· ·statements to cardholders such as Mr. Nyberg?
> 23· · · · · · ·A.· · To keep the cardholder informed of any
> 24· ·changes to their account, their current balances,
> 25· ·transactions from the previous billing cycle, just
> Page 24

---

[4]The creditor shall mail or deliver a periodic statement as required by § 1026.7 for each billing cycle at the end of which an account has a debit or credit balance of more than $1 or on which a finance charge has been imposed. A periodic statement need not be sent for an account if the creditor deems it uncollectible, if delinquency collection proceedings have been instituted, if the creditor has charged off the account in accordance with loan-loss provisions and will not charge any additional fees or interest on the account, or if furnishing the statement would violate Federal law.
http://www.consumerfinance.gov/eregulations/1026-5/2015-01321#1026-5-b-2
(5)(b)(2)(i)
Was 12 CFR 226.5/ Still 15 USCS § 1637(b)

·1· ·generally any change of terms.
**·2· · · · · · ·Q.· · When Capital One is sending account**
**·3· ·statements to their cardholders, are they intending that**
**·4· ·the account statements are to be governed by the**
**·5· ·cardholder agreement in place at the time the statements**
**·6· ·are issued?**
·7· · · · · · ·A.· · That's correct.
**·8· · · · · · ·Q.· · Is Capital One intending to form a new**
**·9· ·agreement based only on the statement issued for a**
**10· ·monthly period with each cardholder?**
11· · · · · · ·MR. TOPOR:· Objection.· Vague.· Calls for a
12· · · ·legal conclusion.
13· ·BY MR. PASSANNANTE:
**14· · · · · · ·Q.· · Go ahead and answer if you understood**
**15· ·the question.**
16· · · · · · ·A.· · I'm not sure I understood the question.
17· ·I'm sorry.
**18· · · · · · ·Q.· · Do you remember the previous question I**
**19· ·asked is whether or not Capital One intended the**
**20· ·statements and the obligations of their cardholders to**
**21· ·be governed by the cardholder agreement that is in**
**22· ·effect at the relevant time the statements are issued;**
**23· ·correct?**
24· · · · · · ·A.· · Correct.
**25· · · · · · ·Q.· · Does Capital One when issuing a monthly**

**1   statement intend that statement to form a new agreement**
**2   with the cardholder?**
3        MR. TOPOR: Objection.  Vague.  Calls for a
4     legal conclusion.
5   BY MR. PASSANNANTE:
**6        Q.    Go ahead and answer.**
7        A.    No.

Exhibit 102, 7-8, (depo pg 24, ln 8-25, pg 25 ln 1-7).

That testimony by Capital One is consistent with the CHA and federal law which requires

the credit card issuer to disclose the legal relationship between the parties. 12 CFR

226.5(c).

**Changes to Your Agreement**
At any time, we may add, delete or change any term of this Agreement unless the
law prohibits us from doing so. We will give you notice of any changes as required
by law. If we do notify you of changes, we will send you a separate notice or inform
you on your Statement. We may send this notice to you electronically as permitted

by law. Our notice will tell you when and how the changes will take effect and
describe any rights you have in connection with the changes.
Exhibit 3 (Stip Facts), pg 5 bottom left.

Objectively a cardholder would expect any deviation from the Agreement to be provided

in clear terms. If what Capital One was doing was attempting to state the account by

sending statements then it would be in violation of the TILA that requires disclosure of the

material terms of the Agreement when the account is opened. Those disclosures would

have to say that the sending of a statement that was not disputed would result in a near

irrefutable agreement that fixes the amount of the debt in the sum stated, subject to

defenses of fraud or mistake.

> We are mindful of the age-old statement by the Pennsylvania Supreme Court
> that '[a]ny contract or instrument by which it is intended to diminish legal rights
> which normally accrue as a result of a given legal relationship or transaction must
> spell out the intention of the parties with the greatest of particularity, since such
> contracts or instruments are construed strictly against the party seeking their
> protection'. *See Morton v. Borough of Ambridge*, 375 Pa. 630, 635, 101 A.2d 661,
> 663 (1954).
> <u>Citibank (S.D.), N.A. v. Rhineer</u>, 30 Pa. D. & C.5th 402, 419-20 (C.P. 2013)

Agreeing to state the account would be a severe reduction in Capital One's and Nyberg's

CHA rights. All the evidence contradicts such a conclusion. Given the clear right not to

dispute as provided by the FCBA, and the CHA's identification of those rights. an account

stated is a material reduction in Nyberg's rights under the CHA. His acceptance cannot be

implied by silence. Such acceptance by silence forming a new agreement, unhinged from

the CHA, would also severely limit Capital One's right to charge interest. <u>Woodfin Heating,

Inc. v. Browning-Ferris Indus.,</u> 10 Va. Cir. 185, 187 (Cir. Ct. 1987). Something Capital

One never intended to do as each quarterly statement after the $834 statement accrued

interest at the cardholder rate of 19.65% interest rather than Virginia (or Oregon's) legal

rate.

"Construction against the drafter of the contract is particularly appropriate in a situation like the present where the contract is one of adhesion with the borrowers' having no opportunity to negotiate its terms." Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Asso., 281 Or. 533, 552, 577 P.2d 477, 489 (1978), also Gray v. Am. Express Co., 240 U.S. App. D.C. 10, 743 F.2d 10, 18 (1984) finding CHA are like insurance contracts and should be interpreted narrowly and strictly construed. The language of the CHA and the statements should not be expansively construed to find a new agreement stating the account but rather against such a notion.

### B.  Capital One Can Only Assign the Account Subject to the CHA.

The PA identifies what is being sold as Accounts which are charged-off credit card accounts. Exhibit 113, pg 1. Those accounts are represented and warranted by Capital One to have not been settled. Exhibit 113, pg 4, 3.4(e). An account stated is a variant of a settlement. It is an agreement fixing the amount due. A purchaser of defaulted credit card accounts would need to know if there was any enforceable agreement between Capital One and the cardholder other than the CHA terms and conditions. If there was a settlement then the terms and conditions would no longer apply and the purchaser would need to know that to avoid an unlawful collection act. Capital One is identifying to PRA that there is no agreement other than the CHA when it warrants that there is no settlement. Despite being told directly that the accounts have not been settled, PRA has taken upon itself to reach back and time and allege that the accounts represented as unsettled were, in fact, settled. False. A made up claim unhinged from any factual basis and unhinged from their own purchase agreement with Capital One.

**C.  No Right To Contact Interest On Account Stated Claim.**

Capital One's representations also include that the account was serviced by Capital One in material compliance with all applicable state and federal laws. The account stated claim cannot include a contract rate of interest of 19.65% as the only term is to agree to the total owed. Terms outside of that agreement would require an express agreement by the other party. Va. Code Ann. § 6.2-312 (open end credit plan exempt from limit on contract rate of interest). Va. Code Ann. § 6.2-313 (when bank can charge finance charge on open/end credit). That sort of agreement would be a contract and PRA would have to prove the right to that accruing interest rate. Virginia limits pre-judgment interest to 6% when the parties have not agreed to an interest rate. Va. Code Ann. § 6.2-301.

In addition, the existence of the CHA and the disclosures are necessary under federal law in order for Capital One to continue accruing interest at the rate it charged. Capital One continued to assess those charges. Capital One assessed interest of apprx. 22-25% on Nyberg's account in all of the statements leading up to the statement PRA relied on as a final settlement of Nyberg's account. See for example, Exhibit 112, pg 19.The statements in the record reflect that only Capital One is changing the balance. Capital One could have stopped sending statements at any time as long as it stopped adding finance charges to the account. 12 CFR § 226.5 in 2010.[5]Va. Code Ann. § 6.2-312-313.

Statements were sent after the one relied upon by PRA. Exhibit 112, pg 29-48. Capital One believed the balance was $976.57 on December 1, 2014. Exhibit 110. If the

---

[5] 12 CFR § 1026.6(b)(2) as of 2011.

account was stated as PRA claims and the previous and subsequent statements are materially the same, and none of them were final billing statement then why wouldn't any of them meet the requirements of an account stated? PRA argues each statement created a new and independent agreement between Capital One and Nyberg and apparently just picked one. That is not alleging a different legal theory. That is making up facts. If, as PRA alleges, the $834 statement, which formed a new agreement independent of and not attached to the CHA or the disclosures required by TILA, then all of the subsequent statements violate TILA when they impose interest rates only permitted by the CHA and disclosed in the original disclosures.12 CFR § 226.5[6] (required disclosures for account opening table in order to comply with TILA).

PRA is, in essence, asking this Court to find that Capital One intended to violate federal law and the law of its home state (Virginia). The record clearly shows that despite the alleged "new agreement" with Nyberg, Capital One continued to send statements to Nyberg accruing interest at over 19.65% at a time when, according to PRA, they had no agreement to do so. Under Oregon law, such an interest rate charged prior to (or after) the $834 statement is usurious and unenforceable. ORS 82.010. Under Virginia law, an open ended credit plan is required in order to charge interest over 6% Va. Code Ann. § 6.2-301, 312-313. On the other hand, if Capital One had an open end credit plan and agreement with Nyberg that continued after the $834 statement, there is no violation of either federal, Virginia or Oregon law since that open ended credit plan is not governed by Oregon law and in compliance with Virginia's law permitting Capital One to charge the interest rate it has agreed upon with its cardholder.

---

PRA will rely on <u>O'Byrne v. Portfolio Recovery Assocs. LLC</u>, No. 12cv447 - IEG

(NLS), 2013 U.S. Dist. LEXIS 42922, at *13 (S.D. Cal. Mar. 26, 2013) affirmed by an

unpublished opinion, to argue that the account stated claim was viable. That case did

not address any choice of law issue and applied California law. Oregon unlike

California, does not aggregate interest to the principal obligation. See e.g. "<u>Ainslie v.</u>

<u>Spolyar</u>, 144 Or. App. 134, 146, 926 P.2d 822, 828 (1996),

> "If the payment exceeds the interest, the surplus goes toward discharging the
> principal, and the subsequent interest is to be computed on the balance of
> principal remaining due. If the payment be less than the interest, the surplus of
> the interest must not be taken to augment the principal; but interest continues on
> the former principal until the period when the payments, taken together, exceed
> the interest due, and then the surplus is to be applied toward discharging the
> principal, and interest is to be computed on the balance as aforesaid.' "
> *Ainslie* quoting <u>First Nat'l Bank v. Courtright</u>, 82 Or. 490, 499, 161 P. 966, 968
> (1916), which quoted Connecticut v. Jackson, 1 Johns Ch (NY) 13, 17-18 (1814).

While Ainsley addressed partial payments, the principal of not augmenting interest to

principal is the same if no payment is made.

PRA asserted that Oregon law applies to the account stated. *See e.g . Exhibit 108.*

Capital One cannot keep adding finance charges at a rate not permitted by Oregon law

if the parties have stated an account under Oregon law which does not have an express

agreement on interest or finance charges. Unless otherwise exempted, interest charges

of over 12% percent are illegal under Oregon law. ORS 82.010 (and the parties have to

agree to exceed 9%). Virginia would limit the rate to 6% if there is no "express contract

to pay interest Va. Code Ann. § 6.2-301.The interest that Capital One charges is only

legal by following the highly regulated Agreement it issued on the Account and Virginia

law. See generally, <u>Piñon v. Bank of Am., NA (In re Late Fee & Over-Limit Fee Litig.)</u>,

741 F.3d 1022, 1025 (9th Cir. 2014) identifying right of a National Association bank to

export the law of the bank's home state in its CHA's. As well  Va. Code Ann. § 6.2-312

and Va. Code Ann. § 6.2-313. If Oregon law did apply to the stated account, the interest accruing prior to the $834 would not aggregate to the principal, is usurious and would be unenforceable. *See e.g. ORS 82.010*. The settlement of the non-usurious charges in the $834 statement would result in a much lower balance if apply Oregon law and given the rule against aggregation.

### D.  Account Governed by CHA Is the Only Interest Capital One Can Assign.

Contradicting PRA's claim that it had standing to bring the account stated claim is the term that all rights, obligations, liabilities, and responsibilities with respect to the servicing of the Accounts sold shall pass from Seller to Buyer. Exhibit 113, ¶ 2.5. That language requires PRA to service the account. The only way to do that would be to comply with the CHA.

The "Bill of Sale" also identifies that the only transfer of any interest to PRA is the transfer of the right, title and interest in the Accounts. Exhibit 111. The PA defines Accounts as the charged off credit card accounts which are subject to the terms and conditions of Capital One. Exhibit 113, pg 3.4(h), (i), (j). Those representations of Capital One identify that the term Account is linked to the CHA. That is also clear when looking at the CHA which limits the right of Capital One to just assigning rights under the CHA.

**Assignment.**

This Agreement will be binding on, and benefit, any of your and our successors and assigns.

You may not transfer your *Account* or your Agreement to someone else without our written permission.
We may transfer your *Account* and this Agreement to another company or person without your permission and without prior notice to you. They will take our

place under this Agreement. You must pay them and perform all of your obligations to them and not us. If you pay us after you are informed or learn that we have transferred your *Account* or this Agreement, we can handle your payment in any way we think is reasonable. This includes returning the payment to you or forwarding the payment to the other company or person.
Exhibit 3 Stip Facts, pg 5.

PRA is bound by the CHA. Capital One cannot assign anything other than the

Account which is governed by the Agreement and that is all the bill of sale states.

## IV.   ACCOUNT STATED CLAIM WAS TIME BARRED.

Nyberg last paid on the account on July 19, 2010. Nyberg I was filed on July 25,

2014. Under Virginia law the account stated claim was time barred a year before the

lawsuit was filed.

> In our view of this case, it is unnecessary to refer to this conflict of authority further, because the plaintiffs here have proved an account stated, and there appears to be an unbroken line of authority which supports the judgment of the trial court, that the true limitation is that applicable to a stated account which here is three years instead of five, and hence this action is barred.
> Ellison v. Weintrob, 139 Va. 29, 31 (Va. 1924)

The CHA (all of them) identify failure to pay as agreed as a default on the account.

See for example, Exhibit 3, pg 3 "Minimum Payment" and pg 4 "Account Default."

Rivera v. Nedrich, 259 Va. 1, 4, 529 S.E.2d 310, 311 (1999) A cause of action on a note

accrues when the obligation to pay is breached. Va. Code Ann. § 8.01-230[7] (accrual).

Nyberg missed the August 23, 2010 due date for the minimum payment and did not pay

on the account again. Exhibit 112, pg 4, 6. The statute of limitations does not run from

---

[7] In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property, when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered, except where the relief sought is solely equitable or where otherwise provided under § 8.01-233, subsection C of § 8.01-245, §§ 8.01-249, 8.01-250 or other statute.
Va. Code Ann. § 8.01-230

the time the statement was sent but from the time the default occurred. Magarity v. Shipman, 93 Va. 64, 65-66, 24 S.E. 466, 466-67 (1896). Both Oregon (ORS 12.230) and Virginia (Va. Code Ann. § 8.01-229(G))[8] require a promise to pay to be in writing in order to toll an applicable statute of limitations. Here the alleged account stated is based on the silence of defendant. That is not an agreement in writing that would support tolling either State's limitations period. "In order to meet this burden, the plaintiff must show that the obligation to pay was renewed in writing." Woodfin Heating, Inc. v. Browning-Ferris Indus., 10 Va. Cir. 185, 186 (Cir. Ct. 1987). The limitation period runs from the date of injury which occurred when defendant defaulted on the contract, not when plaintiff declared the account to be stated. If PRA calculated the limitation period for an account stated claim to begin from the charge off date in order to extend the time available for suit when compared to a breach of contract claim then that would be an unfair, abusive, and deceptive practice.

### V.    THE CONTRACT CLAIM WAS TIME BARRED.

Neither the CHA nor the application constitute a signed written agreement under Virginia law. Under Virginia law, such a contract as Nyberg had is considered an

---

[8]**G.** Effect of new promise in writing.
- **1.** If any person against whom a right of action has accrued on any contract, other than a judgment or recognizance, promises, by writing signed by him or his agent, payment of money on such contract, the person to whom the right has accrued may maintain an action for the money so promised, within such number of years after such promise as it might be maintained if such promise were the original cause of action. An acknowledgment in writing, from which a promise of payment may be implied, shall be deemed to be such promise within the meaning of this subsection.
- **2.** The plaintiff may sue on the new promise described in subdivision 1 or on the original cause of action, except that when the new promise is of such a nature as to merge the original cause of action then the action shall be only on the new promise.

Va. Code Ann. § 8.01-229

unwritten contract subject to the Virginia's 3 year statute of limitations. PRA is anticipated to argue that, to the extent that Oregon's limitations period did not apply to its claim, the 2010 CHA clause applying a longer statute of limitations was enforceable against Nyberg. This contention is wrong and not supported by either Virginia or Oregon law. The 2010 CHA statute of limitations clause is an extension clause that claims to apply the limitation period of the jurisdiction "where you live" only if the statute of limitations in the state where you live is longer than Virginia's. This extension clause did not exist in the 2005 CHA that applied to Nyberg's account.

First, ORS 12.410 governs which state's limitations applies. The CHA extension clause r cannot be used to override the statutory directive as to which state's statute of limitations applies to PRA's claim. Nevertheless, even if the extension can be considered notwithstanding ORS 12.410, it is an unenforceable extension of the statute of limitations under Virginia law. The CHA provides:

> You waive any applicable statute of limitation as the law allows. Otherwise, the applicable statute of limitations period for all provisions and purposes under this Agreement (including the right to collect debt) will be the longer period provided by Virginia or the jurisdiction where you live. If any part of this Agreement is found to be unenforceable, the remaining parts will remain in effect."
> Exhibit 3, pg 5 "The Law that Applies to Your Agreement."

One can't get to step two, that the longer period provided by Virginia or the jurisdiction where you live applies, without first applying Virginia's applicable statute of limitations and then extending it under certain circumstances (the state where a cardholder lives having a longer limitations period). When applying another state's limitation period, Oregon also applies that states tolling provisions. ORS 12.410-480. Oregon is clear that the three year limitation provided by Virginia is the applicable statute of limitations, the provision applying a longer period than Virginia's three year statute of limitations is an

impermissible extension of Virginia's three year statute of limitations. It is unenforceable

under Virginia law because the extension clause is part of the CHA which is not

permitted by Va. Code Ann. § 8.01-232.

> **A.** Whenever the failure to enforce a promise, written or unwritten, not to plead the statute of limitations would operate as a fraud on the promisee, the promisor shall be estopped to plead the statute. In all other cases, an unwritten promise not to plead the statute shall be void, and a written promise not to plead such statute shall be valid when (i) it is made to avoid or defer litigation pending settlement of any case, (ii) it is not made contemporaneously with any other contract, and (iii) it is made for an additional term not longer than the applicable limitations period. No provision of this subsection shall operate contrary to subsections B and C of this section.
> Va. Code Ann. § 8.01-232

Oral promises not to plead the statute of limitations are void. Written promises not to

plead the limitation defense are also void, unless three very limiting conditions are met:

1.   made to defer litigation pending settlement, AND

2.   not made at the same time as any other contract, AND

3.   not extending the SOL more than 2X the original.

Unless not enforcing the promise not to plead would operate as a fraud on the promise;

which is pretty extraordinary and simply breaking a promise to pay is not fraud. PRA

seeks to enforce a promise not to plead the statute of limitations defense that was made

prior to default, without any threat of litigation, and was part of another contract. It is

patently unenforceable.

The statute of limitations provision in the contract is not at issue in this case

because plaintiff did not sue for breach of contract. However, as a pre-caution Nyberg

addresses why that provision fails to result in Oregon's statute of limitation being applied.

As stated above, unwritten promises not to plead the SOL are void under Virginia

law. Virginia defines a contract in writing as a signed and concluded writing. <u>Newport</u>

News, H. & O. P. Dev. Co. v. Newport N. S. R. Co., 97 Va. 19, 21-22, 32 S.E. 789, 790 (1899). A credit card agreement that does not require a signature to bind the parties is an oral contract. See e.g. Portfolio Acquisitions, L.L.C. v. Feltman, 391 Ill. App. 3d 642, 652, (2009), (credit card debt subject to shorter limitation as it did not meet longer written contract limitation because contract and parties to contract had to be established by parol evidence). Same, In re Lewis, 517 B.R. 615, 621-22 (Bankr. E.D. Va. 2014) declining to apply Virginia five year limitation to a Chase credit card where there was no signature. Most credit cards do not even attempt to request a signature to consummate the agreement. That lack of intent to require a signature to bind the parties is fatal to establishing a written contract under Virginia law.

> The fact that the Writing states the signature requirement twice underscores its importance to Hassell and clearly evidences Hassell's intent that the Writing would not become a written contract without Dixon's signature. Dixon's failure to sign and return the Writing as its terms required did not preclude the parties from forming a binding contract. But Dixon's failure to sign and return the Writing did preclude the Writing itself from becoming a written contract as contemplated by Code § 8.01-246(2). Dixon v. Hassell&Folkes, P.C., 283 Va. 456, 461, 723 S.E.2d 383, 385 (2012)

The 2010 CHA is an oral contract as it does not contain any requirement for a signature. Capital One has no agreement with Nyberg that contains a signature. Even if the original CHA was signed and concluded, the process of issuing new CHA's, such as the 2010 CHA that do not require a signature renders the CHA unwritten. Nyberg's account with Capital One is an unwritten contract under Virginia law. It is ratified by use of the account. Capital One does not want to keep track of signatures as evidenced in this case by the complete lack of any signature. Capital One wants to change the terms without obtaining signatures so that it can change terms on a mass basis just by sending notice in the

statements. See Exhibit 112, pg 15 for an example of a statement giving notice of changes in terms.

Specific to interpreting an earlier version of Va. Code Ann. § 8.01-232 is *Soble*. While that decision rejected a verbal promise not to plead the statute it made the following comment which identifies the need for a signature.

Statutes which are not inconsistent with one another and which relate to the same subject matter are held to be *in parimateria* and should be construed together. *Mitchell* v. *Witt,* 98 Va. 459, 36 S.E. 528. The subject matter under consideration is the effect a subsequent promise has on the statute of limitations. Sec. 5810 is the statute of limitations. Secs. 5812, 5813 and 5821 set forth the conditions and circumstances under which the provisions of 5810 shall not be applied. Sec. 5821 is comparatively new (adopted in 1919). The provisions [***15] of 5812 have been in force for more than a hundred years and have been applied by this court in a long line of cases. Review of a few of these cases is pertinent to show the settled law of this Commonwealth at the time the statute in question was adopted.

[10] Even before the statutory enactment requiring a new or subsequent promise to be in writing, this court held "that *HN5* the subsequent promise or acknowledgment, to take the case out of the statute, ought to be such a one as if declared upon would support an action of itself; that is, it must be an express promise to pay, or such an acknowledgment of a balance then due, unaccompanied by reservations or conditions, as that a jury ought to infer from it a promise to pay." *Aylett's Ex'r* v. *Robinson,* 9 Leigh (36 Va.) 45. *Sutton v. Burruss,* 9 Leigh (36 Va.) 381, 33 Am. Dec. 246; *Bell* v. *Morrison,* 26 U.S. 351, 1 Pet. (26 U.S.) 351, 7 L. Ed. 174.

 (omitted)

For more than a century no oral promise to pay an obligation barred by the act of limitation has been enforceable in  [*500]  this Commonwealth. Prior to the adoption of the Code of 1919, a promise, whether oral or written, not to plead the statute of limitations -- unless the written language was broad enough to include an acknowledgment of the debt from which a promise to pay might be implied -- was not enforceable. It was the evident purpose of the Code revisors, in drafting the provisions of sec. 5821, to put the two classes of promises on the same plane, and to make one promise as valid as the other, and to attach to each the same dignity and importance.
Soble v. Herman, 175 Va. 489, 496-498, 9 S.E.2d 459, 463 (1940)

*Soble* makes it clear that the kind of promise to pay a debt that acts on the statute of limitation is the same kind of promise as the one to waive the statute of limitations. Both require a signature, by the party charged, and the promise to be in writing. That requirement is mirrored in Va. Code Ann. § 8.01-229(G)) and Va. Code Ann. §8.01-246(2). A signature on a concluded contract allows for the longer limitation period. Slaey v. Harrington (In re Slaey), 539 B.R. 500, 503 (E.D. Va. 2015) identifies a signed writing as proof of a written promise. Virginia applies a 5 year limitations period to written contracts. The statute identifies a strict signature requirement. Va. Code Ann. §8.01-246(2)Woodfin Heating, Inc. v. Browning-Ferris Indus., 10 Va. Cir. 185, 186 (Cir. Ct. 1987). (check signed by defendant to make payment on debt not a promise to pay in writing.) If the absence of a signature renders a contract unwritten it follows that the language in Va. Code Ann. § 8.01-232 requiring an extension of the statute of limitations to be written requires a signature as well.

Contrary to PRA's assertion, the promise to not assert Virginia's statute of limitations if the state where a cardholder lives is longer is not severable from Virginia's statute governing extension and waiver of the statute of limitations. It details specifically when an extension of Virginia's statute of limitations is permissible under Virginia law. Because the clause is one sided (it does not apply to cardholders who have shorter limitations periods than Virginia's) it is clearly a clause extending the Virginia statute of limitations that is otherwise applicable to the cardholder agreement under the choice of laws clause. And given that it is in the cardholder agreement, it is not made independent of any other agreement and is thus barred by Va. Code Ann. § 8.01-232. Slaey v. Harrington (In re Slaey), 539 B.R. 500, 510 (E.D. Va. 2015) rejecting written, signed agreement to waive statute of limitations because not made to avoid or defer litigation

and it was simply a promise with no evidence that the promise was a fraud on the promisee.

Even if Virginia did not have a statute that expressly rejected the waiver of the applicable limitation period Virginia and Oregon would reject it as an impermissible extension of the statutory limit on the time to bring suit. Contracts are only enforceable to the extent that they do not contradict a statute. For instance in Oregon one can only loan money at the rate of 12% per ORS 12.080 unless one of the exceptions is met. A contract that did not meet those exceptions that loaned money in excess of 12% would not be enforceable. One can loan money at a rate that is 12% or less but not in excess. The same is true of statutes of limitations. One can contract for a shorter statute of limitations but not one that exceeds what is permitted by statute. Statute of limitations are matters of public policy and jurisdictions uniformly decline to enforce contractual agreements that extend the time allowed to bring suit. John J. Kassner& Co. v. New York, 46 N.Y.2d 544, 551, 415 N.Y.S.2d 785, 789, 389 N.E.2d 99, 103 (1979). Oregon has ruled in a similar fashion, Mitchell v. Campbell, 14 Or. 454, 459, 13 P. 190, 192 (1886).

Virginia has an exception to this policy to the extent identified by Va. Code Ann. § 8.01-232. Virginia will not enforce an agreement to extend the statute of limitations that does meet that narrow statutory exception. Especially when one enters into that contract of adhesion without a waiver or extension of the statute of limitations as evidenced by the 2005 CHA (Exhibit 1 and 2). And especially when the limitation is extended in an amendment through adhesion as well.

> Statutes of limitation are measures of repose, founded on public policy, which requires that disputes shall be commenced and settled while the transactions are fresh, and the evidence concerning them is still in existence, and in the power of

the parties.
Rogers v. Strother, 68 Va. 417, 424 (1876)

Even if the Court is not convinced that the language of the 2010 extension, on its own constitutes an impermissible extension of the applicable statute of limitations it is for Nyberg's account. Nyberg first opened his account in 2004. Capital One, in response to Nyberg's subpoena, provided a copy of the 2005 CHA that applied to Nyberg's account. Stipulation of Fact 5, Exhibit 1, pg 3 "Applicable Law." The 2005 CHA is devoid of any language applying anything but Virginia law (and hence Virginia's applicable statute of limitations) to Nyberg's account. The 2010 CHA purporting to apply Oregon's longer statute of limitations to Nyberg's account was, at that of its adoption by Capital One, a clear extension of the statute of limitations that had been applicable to Nyberg's account. For all of the above reasons, the CHA meets none of the elements of the statute.

**FDCPA VIOLATIONS**

**VI.    ELEMENTS OF FDCPA CLAIM.**

One needs a consumer, a debt collector, a consumer debt and an attempt to collect the debt that violates one of the provisions of 15 USC 1692 to establish an FDCPA claim. The stipulated facts establish that Nyberg is a consumer, the debt arising out of the Capital One account ending in 3245 is a consumer debt and PRA is a debt collector. Stipulated Facts, #1-3.

The filing of Nyberg I is clearly an attempt to collect the debt. As is the credit reporting of the debt. The dunning letters identify that if Nyberg pays the debt PRA will request that the trade line be updated to reflect that the account is settled. Exhibit 104, 5. That is evidence that PRA is leveraging the credit reporting to obtain payment on the

debt. The letters themselves are outside of the FDCPA one year limitation period and not subject to this action.

### A. Least Sophisticated Consumer Standard Applies to violations of 15 USC 1692e and f

#### 1. Least Sophisticated Consumer Applies to 1692e.

The least sophisticated consumer standard is applied to determining conduct of a debt collector. <u>Gonzales v. Arrow Fin. Servs., LLC</u>, 660 F.3d 1055, 1061-62 (9th Cir. 2011)*,* applying the standard in determining that a collection letter with two possible meanings, one of which was inaccurate or false violated 15 USC 1692e(10) and that an implied threat to negatively report an obsolete debt violated 15 USC §1692e(5).

#### 2. Least Sophisticated Consumer Applies to 1692f.

The least sophisticated standard has been applied to 15 USC 1692f as well. <u>Donohue v. Quick Collect, Inc.</u>, 592 F.3d 1027, 1033 (9th Cir. 2010).

#### 3. Least Sophisticated Consumer Standard Can Apply To 15 USC 1692d, Both A Substantive Question And A Jury Question

15 USC 1692d prohibits conduct by a debt collector, the natural consequences of which, is to harass, oppress, or abuse any person. This protection could be resolved on the basis of the least sophisticated consumer standard. "Thus, we hold that claims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." <u>Jeter v. Credit Bureau</u>, 760 F.2d 1168, 1179 (11th Cir. 1985). This court considered the issue and relying on that reasoning and *Guerrero v. RJM Acquisitions*

*LLC*, 499 F.3d 926, 934 (9th Cir. 2007), *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010), applied the "least thick-skinned debtor" standard in <u>Lewis v. Asset Acceptance, LLC</u>, 2013 U.S. Dist. LEXIS 34128, *28 (D. Or. Jan. 9, 2013).

But because the conduct might have a unique effect on the consumer that arises because of her circumstances it should be resolved by a jury. For instance a poor consumer may be unable to hire a lawyer to defend a time barred collection lawsuit, while a superbly rich consumer may have no problem hiring a lawyer. Or an undocumented worker may not be willing to defend a collection lawsuit because of fear that it may affect her immigration status.

Plaintiff in this case was fortunate to find lawyers competent to handle his case on terms that he could afford but he still incurred out of pocket expenses. Nyberg qualified for a fee waiver in Nyberg II. The fees of over $50,000 that were incurred in defeating Nyberg II are evidence that PRA's collection scheme is unfair and abusive. Declaration of Knewtson, ¶ 5. The debts are small and the most likely outcome for a risk adverse population of defendants is that the claims will go to default or will be paid. Most collection defendants do not have lawyers. Declaration of Knewtson, ¶ 7. Defeating Nyberg II requires the collection defendant to find counsel that will bear the expense and risk of that litigation. There is no way the average defendant could or would pay the costs of defending a case like this when the debt is comparatively non-consequential. Those elements permit PRA to pursue its collection scheme unimpeded. Declaration of Nyberg.

## VII.    COUNT ONE

1. The attempt to collect a debt by asserting it was an account stated when that theory was not viable is a violation of at least one, if not more, provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

The account stated claim is a charade. The allegation that Nyberg assented to the charges in the $834 statement when he did not dispute the amount within the time required by 15 USC §1666 is a false statement. Cases holding that the failure of a consumer to seek the protections of TILA cannot, as a matter of law, become the equivalent of accepting the charges detailed on their statement demonstrates the falseness of PRA's statement to Nyberg. That statement matters. Capital One understands this. The testimony of Capital One makes it clear that there was no attempt to state the account by anyone. PRA's allegation in paragraph 3 of their complaint is not a mistake. PRA did not call Capital One to the stand in Nyberg II. Declaration Knewtson, ¶ 6.Had PRA done so Capital One would have testified as it did at the deposition and PRA's claim would fail. Rather than embark on the account stated claim PRA should have asked Capital One the pertinent questions about what effect the statements had on the account when it purchased thousands of accounts. Even short of that, PRA was on notice that the accounts were not settled. Their agreement with Capital One said so. The statements PRA was provided (and for which they claimed in Nyberg II to rely upon on their own business records) by Capital One said exactly the opposite of what PRA alleged Capital One intended. They stated that the amount is not a payoff and you may owe more than the balance reflected on the statement as a result of the accrual of finance and other charges provided in Nyberg's cardholder agreement. Exhibit 112, pg 27. Those finance charges could only accumulate pursuant to the original agreement between Nyberg and Capital One. PRA has no evidence to support their false contention that Nyberg and PRA settled their account and intended to apply Oregon law to this new agreement. The only reason PRA made these allegations is to escape Virginia's three year statute of limitations that was applicable to Nyberg's account. See similar attempt, Harden v. Autovest, L.L.C., No. 1:15-cv-34, 2015 U.S. Dist. LEXIS

98584, at *8-9 (W.D. Mich. July 29, 2015) , (attempt to collect car deficiency under

account stated). Account stated applies only in limited situations and not on the facts of

Nyberg I.

> On consideration of the authorities, we have concluded not to extend the rule,
> making the rendition of an account, and its retention without objection a stated
> account, beyond its original limits; viz., controversies between merchant and
> merchant.
> Anding v. Levy, 57 Miss. 51, 64 (1879)

West Virginia rejects it as applied to a bank and customer:

> This seems to be the rule in Virginia and West Virginia, as between merchant
> and merchant, and principal and agent, with mutual accounts. *Ruffner* v. *Hewitt*,
> 7 W. Va. 585; *Robertson* v. *Wright*, 17 Gratt. 534; *Shrewsbury* v. *Tufts*, 41 W. Va.
> 212, 23 S.E. 692.

> But we do not think the rule applicable, as a general proposition, to transactions
> between banker and customer. Moreover, it does not clearly appear that no
> objection was made by plaintiff to this item; he does not seem to have clearly
> understood it.
> McGraw v. Traders' Nat'l Bank, 64 W. Va. 509, 515-516, 63 S.E. 398, 400, 1908
> (W. Va.1908)

It is a failed claim on a substantive and factual level. PRA simply made it up out of thin

air. This is not a *Heintz v. Jenkins* filing of an unsuccessful claim. *Heintz* identifies that

sometimes collection cases are unsuccessful. If the reason was a really bad witness or

a document was not filed and there is a failure of proof then the debt collector may be

entitled to a pass. But the account stated claim is an example of misleading litigation

designed to circumvent the applicable statute of limitations and mislead unsuspecting

consumers into not contesting the claims filed by PRA. This was not litigation resulting

in the loss of a meritorious claim. It was a baseless claim asserted without any factual

support in either the purchase agreement, cardholder agreement or statements and

without legal support under Virginia or federal law. The complaint itself sought and

claimed to Nyberg that he had lost the right to dispute charges on his Capital One

account when he did not dispute them under 15 USC §1666. These type of false allegations matter. Filing suits with made up facts to avoid application of the statute of limitations that had long before barred any legitimate claim against Nyberg is equally oppressive and misleading.

While PRA is anticipated to cite to cases that have held an account stated claim is viable for a credit card issuer, none of those cases address the impact such a claim has on the burden shifting that occurs for credit card charges and that is prohibited under the FCBA. Even if the Court finds that an account stated claim is plausible for a credit card issuer, here PRA had no evidence in its position that would support such a claim under Oregon or Virginia law. The lack of evidence an factual support when PRA was on notice that it had neither, yet plowing ahead with a time barred claim is abusive and misleading. Making up an allegation that is untrue is a false, unfair, deceptive and abusive collection practice. Clearly PRA misrepresented the legal status of the debt by asserting the account stated claim. PRA also misrepresented the legal status of the debt by asserting that Nyberg had assented to the amount due because he did not dispute the charges within the time allotted under 15 USC §1666.

## VIII.    COUNT TWO

5.      Asserting an account stated theory of law on a credit card debt in order to bypass the statute of limitations and other defenses to the debt that arise out of the contract between the plaintiff and Cap1 and which controls the credit card debt is a violation of at least one, if not more, provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## A. Account Stated Claim More Difficult to Defend Than Contract Claim.

By avoiding the contract and filing an account stated claim PRA creates legal uncertainty. The outcome of a breach of contract claim is predictable. There are far

more cases and statutes that identify the outcome of a breach of credit card contract then there are cases and statutes allowing an unsophisticated consumer to predict the outcome of an account stated claim. That uncertainty is to PRA's advantage because PRA sues on relatively small debts. PRA unfairly redacted the part of the purchase agreement that identifies the account balance range that it is targeting. Smaller debts are less likely to be contested. Exhibit 113, pg 2 "Eligible Pool." Nyberg II demonstrates how PRA exploits that uncertainty. The attorney fees incurred in that case were over $50,000. Declaration of Knewtson. That number illustrates the difficulty in defeating the sham account stated. When compared to the amount of the debt it is improbable that an unsophisticated consumer is going to litigate the merits of PRA's claim. Had PRA sued under breach of contract then the unsophisticated consumer would have been able to establish a conventional defense if there was one. The pool of available lawyers for that defense is much larger than the pool available to Nyberg. For instance the statute of limitations for a breach of credit card debt governed by Virginia law may be challenging, but the determination of that type of claim is readily ascertainable. Ascertaining that a limitations defense exists on a claim that PRA asserts, contrary to its agreement with Capital One, is governed by Oregon law is much less discernible to the least sophisticated consumer. The suit filed by PRA was clearly time barred under Virginia law. Because the claim under Virginia law was clearly time barred, the filing of Nyberg 1 is an assertion that Oregon law applies to Nyberg's account and is a false statement designed to avoid defense of the suit. Most Oregon lawyers are familiar with Oregon's statute of limitations. It is six years. Unhinging the account from the cardholder agreement changes the choice of law analysis in a way that most consumers could not be expected to understand. Asserting that the law of a jurisdiction applies that does not in order to take advantage of a longer statute of limitations is misleading and abusive.

The least sophisticated consumer could not be expected to know or understand that PRA's assertion in this regard is in direct contravention of the representations made to it when they bought his account and is not supported by law. The correct outcome is more likely to manifest with a breach of contract claim.

Capital One has played the same game as PRA in adopting the 2010 language about the statute of limitation extension. That is another example of these mass issuers of certain contracts of adhesion creating legal hurdles for the cardholder's to overcome. Even so the guidance in the caselaw about the 2010 CHA extension of the statute of limitations is easier to identify and address than the account stated claim. Virginia's has clear guidance on that issue as briefed by Nyberg but even so many lawyers who defend collection cases have given up on defending the 2010 CHA. There are 10-15 cases debating the Virginia statute of limitations in the credit card context but none attempting to resolve the 2010 CHA clause.

## B. Account Stated As Applied To A Credit Card Account Is Deceptive And Difficult to Overcome.

Similarly, in *Capital One Bank (USA) NA v. Clevenstine,* 7 Pa. D.&C.5th 153 (Ct. Com. Pl. Centre Cty. 2009), the Centre County **[5]** Court rejected an account stated theory in the case of credit cards, instead holding that the plaintiff's complaint was insufficient under 1019. In that case, the court noted that "[i]t is unreasonable to expect the average debtor to understand the changing terms of a Customer Agreement such that he or she can object to any invoice received in a timely manner. For many, the first and only time they will consider what is in the "fine print" is when they fall behind on payments and find themselves in a position like the one in which Defendant now finds herself. *Id.* at 158.

For the reasons stated in *Samanez and Clevenstine,* rejecting the account stated theory in credit card cases makes more sense. Otherwise, a credit card plaintiff can make an end run around the writing requirements of Pa.R.Civ.P. 1019 simply by distinguishing their complaint as an action in account stated rather than breach of contract, which is exactly what Plaintiff JMM PC Company, has done in this case.

JMMM PC Co. v. Stillwagon, 2011 Pa. Dist. &Cnty. Dec. LEXIS 24, *4-5 (Pa. County Ct. 2011)

PRA seeks to exploit the universal lack of disputes by cardholders on accounts that go into default. The idea that a party to transactions can reach a mutual accounting together depends on those parties being able to understand how the sum was computed. Only then can one even begin to assume that the other person knows how to arrive at the right number and is competent to agree. That is not the case with credit card accounts. PRA can't do it and that's why PRA steers clear of any claim that might require it to figure out the CHA and what the debt truly is. Instead it makes up facts and puts the burden on the least sophisticated consumer try to unwind the account it falsely claims the account was settled and stated and challenges the consumer to prove it is wrong simultaneously taking away rights that consumers were provided under the FCBA to dispute debts and not bear the burden of proving unauthorized uses of their cards.

The purchase agreement excludes accounts that have been disputed which makes sense if one wants to avoid collecting a debt that is not owed. But using that lack of dispute to fabricate a claim is an abusive debt collection practice. Once the actual Agreement, documents related to the account are examined it is clear that account stated does not apply to Nyberg.

### c. Account Stated Opens the Door To The Incorrect Application Of Oregon Law And Higher Judgment Interest.

PRA's complaint alleges that "Under Oregon law, Plaintiff has full right to collect on the Account." Exhibit 107, pg 2, ¶ 6. PRA's Nyberg II MSJ briefing does makes a claim for post-judgment interest. Exhibit 108, pg 16. The right to interest is not procedural. It is substantive and the CHA makes it clear that Virginia law applies. Virginia allows for 6% interest to accrue on a judgment. Va. Code Ann. § 6.2-302. Had PRA prevailed in Nyberg I or II with the application of Oregon law then the judgment

would reap 9% interest. ORS 82.010(2). Identifying that Virginia's interest rate applies is

much easier if the CHA is relied upon. Alleging a right to greater interest than PRA is

entitled to under Virginia law overstates the debt and attempts to collect interest in an

amount not authorized by law or the parties' contract. 15 USC 1692(e)(2) and (f)(1).

## IX.    COUNT THREE

3. Defendant's attempt to collect a debt, by filing a lawsuit on a debt that was barred
   by the applicable statute of limitations is a violation of at least one, if not more,
   provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692d, 1692e,
   1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

   As the Court recognized in its earlier order, a debt collector violates the FDCPA
   by using the courts to attempt to collect a time-barred debt. *See*Martinez v.
   Albuquerque Collection Services, 867 F.Supp. 1495, 1506 (D. N.M. 1994)("A
   collection agency's attempts to collect on time-barred accounts violate the
   FDCPA."); Beattie v. D.M. Collections, Inc., 754 F.Supp. 383, 393 (D.Del.
   1991)("[T]he threatening of a lawsuit which the debt collector knows or should
   know is unavailable or unwinnable by reason of a legal bar such as the statute of
   limitations is the kind of abusive practice the FDCPA was intended to eliminate.").
   *See also*Kimber v. Federal Financial Corp., 668 F.Supp. 1480, 1487 (M.D. Ala.
   1987). In Thompson v. D.A.N. Joint Venture III, L.P., 2007 U.S. Dist. LEXIS
   41398, 2007 WL 1625926, *2 (M.D. Ala.), the court held that the defendant's
   failure to move to set aside the underlying state court default judgment after a
   summary judgment ruling that the underlying state court action violated the
   FDCPA because it was time-barred constituted an additional FDCPA violation.
   McCollough v. Johnson, Rodenberg&Lauinger, 610 F. Supp. 2d 1247, 1257 (D.
   Mont. 2009) affirmed McCollough v. Johnson, Rodenburg&Lauinger, LLC, 637
   F.3d 939 (9th Cir. 2011) applying strict liability standard to 15 USC 1692e.

Defendant likewise attempted to collect the debt by actually filing a lawsuit after the

applicable limitations period expired. Applying Oregon's statute of limitations to an

account stated that is subject to a claim that is subject to Virginia law and Virginia's

limitations period is an unfair and deceptive practice. The least sophisticated consumer

would not be able to identify the applicable statute of limitations.

As of 2011 *Capital One v Fort* was decided which made it clear that Virginia law

applied to a Capital One account. For a company that files hundreds of lawsuits a year

on these types of accounts it should have known better. In fact the briefing submitted in Nyberg II shows no footing for PRA's claim that Oregon law applies. Nordyke argued incorrectly that Virginia would toll the limitation period because Nyberg had never been to Virginia and therefore that was unfair and Oregon would make it all better by requiring its longer limitation period to apply. Exhibit 108, pg 13-16. This is in direct contravention to Virginia's tolling statue which requires that a debtor be in the state and then remove themselves from Virginia after acquiring the obligation. <u>Jayne v. Kane</u>, 140 Va. 27, 124 S.E. 247, 250 (1924). Va. Code Ann. § 8.01-229(D).

> Most important, because the FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors, it is logical for debt collectors--repeat players likely to be acquainted with the legal standards governing their industry--to bear the brunt of the risk. As we have oft repeated, it does not seem "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393, 85 S. Ct. 1035, 13 L. Ed. 2d 904 (1965); *see also Swanson*, 869 F.2d at 1228.
> <u>Clark v. Capital Credit & Collection Servs.</u>, 460 F.3d 1162, 1171-72 (9th Cir. 2006)

Here PRA had to make several false allegations in its complaint that were directed at Nyberg all of which are material. First that he had accepted all of the charges by not availing himself of the 60 days to dispute under the FCBA, second that Oregon law applied which carried with it the false implication that PRA's claim was not time barred and that PRA would be entitled to interest greater than that permitted under Virginia law for the claim asserted. See Exhibit 107. For all of these reasons no reasonable juror could find that defendant had any basis for applying Oregon law FRCP 56, that PRA had a viable account stated claim that was not time barred or that PRA had the right to interest greater than 6% on their claim.

## X.    COUNT FOUR

4. Defendant's overstating of the debt by reporting on plaintiff's credit report the amount owed was $977 when defendant sued for $834 and asserted that $834 was the true amount owed is a violation of at least one, if not more, provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(8), 1692e(10), 1692f, and 1692f(1).

This count is basically in the alternative count to Count 1. Nyberg will assume for this case that Capital One had the right to charge interest on the account after the $834 statement was sent. If PRA was correct that the account was stated in a fixed sum then the debt was $834 and PRA did not have the right to report the debt in the amount of $977. That PRA did so is evidence that PRA does not believe the account was stated as it alleged in Nyberg I. Hard to reconcile a bona fide error defense on the account stated claim when PRA took the position that the amount owed under the CHA was the right amount.

At any rate demanding two distinct sums as the amount owed is a clear violation of 15 USC 1692(e). PRA did not represent that the $834 was a voluntary reduction of the debt. Further a voluntary reduction by PRA contradicts PRA's contention in their lawsuit that there was an agreement to settle the amount due by Capital One and Nybger at $834.00. If Capital One and Nyberg agreed to settle his account at $834.00, PRA did not voluntarily reduce anything. It simply demanded $976 in the collection letters and reported to the credit reporting agencies $977 was owed. If Nyberg had paid the $976 then he would have overpaid the debt. Hepsen v. Resurgent Capital Servs., LP, 383 F. App'x 877, 883 (11th Cir. 2010),(collection agency demanded $2,679 when debt buyer only established right to $1,369 plus interest thereby violating 1692e(2)(A)).

The account stated claim has to be binding on Capital One as well as Nyberg if Nyberg can be found liable for the claim. If it is binding then that agreement supersedes

any other agreement and is a bar to the contract claim. "In the same way, when Capital

pursues a debt it *knows* is overstated, Capital simultaneously misrepresents the debt in

contravention of § 1692e *and* seeks to collect an amount that is not permitted by law in

contravention of § 1692f(1). " Clark v. Capital Credit & Collection Servs., 460 F.3d 1162,

1178 (9th Cir. 2006)

If $977 was not owed then it was false to report that sum on Nyberg's credit

report and a violation of 1692e(8):

> Anderson alleges sufficient facts for this claim to survive a motion to dismiss.
> Communicating or threatening to communicate to any person credit information
> which is known or should be known to be false violates 15 U.S.C. § 1692e(8). As
> a condition of the Agreement, BOA was required to report to the CRAs that
> Anderson is current on her mortgage until the date of a foreclosure sale. Futher,
> BOA incorrectly listed $10,000 as "past due" on those reports. BOA knew or
> should have known that information was false. The act of reporting to CRAs is
> not actually necessary to effectuate foreclosure, *Memmott*, 2011 U.S. Dist.
> LEXIS 44330, 2011 WL 1560985, at *11, and thus is "debt collection" under the
> FDCPA. BOA's motion to dismiss relating to this claim should be denied.
> Anderson v. Bank of Am., N.A., No. 3:13-cv-1660-AC, 2014 U.S. Dist. LEXIS
> 129536, at *28 (D. Or. July 29, 2014)

## XI.    BONA FIDE ERROR DEFENSE

PRA has filed a 2nd Amended Answer to the First Amended Complaint which

includes a BFE defense that boils down to a mistake of law defense. PRA explained

it as:

> Nordyke, Dale, (Pages 40:21 to 41:17)
>                   40
> **21   Q.  If you could get Exhibit 1.  Would you look at**
> **22   subject 18, please.  PRA has alleged a Bona Fide Error**
> **23   defense.  Would you please tell me the factual basis for**
> **24   PRA's Bona Fide Error defense in Mr. Nyberg's suit**
> **25   against it.**
>                   41
> 1      A.  The facts supporting the Account Stated Claim
> 2   exists, the evidence has supported the Account Stated
> 3   Claim.

**4      Q.  And what specifically are those facts that**
**5  existed, each one of them?**
6          A.  The balance owed at the time of charge-off.
7  The last payment statement was within the Statute of
8  Limitations.  There was no dispute, written or
9  otherwise, by the defendant of the final balance owed.
10  It was all of which supports an Accounts Stated.
**11      Q.  So the facts that you had were the balance owed**
**12  at the time of charge-off, a payment made by the debtor**
**13  within the statute, you mean the Statute of Limitations?**
14          A.  Correct.
**15      Q.  And then no dispute by the debtor, oral or**
**16  written?**
17          A.  That -- that is correct.

Exhibit 115, pg 4-5 (depo pg 40, ln 21 to 41, ln 17).

That statement does not support PRA's alleged bona fide error defense. The Nyberg I

complaint makes it clear that PRA is willfully misrepresenting the FCBA as requiring a

consumer to dispute statements within 60 days or forever waive any right to dispute.

PRA did not need to do extensive legal research on account stated. It knew when it

bought the portfolio that Virginia law applied to the account. Exhibit 113, pg 5, (j). It

could also have asked Capital One whether Capital One had given up the Account and

CHA and formed a new agreement, stating the account with the cardholders. Certainly it

thought it could demand $977 from Nyberg. Exhibit 104. That demand is irreconcilable

with its collection pleadings. It made up the account stated claim and engaged in direct

deceit by unequivocally stating the FCBA required the cardholder to dispute. How any

collector or lawyer can interpret the FCBA to require the cardholder to dispute and then

interpret the lack of dispute as creating an account stated is beyond belief.

   If PRA was in law school its collection policy and procedure would require a

failing grade. As one of the biggest purchasers and collectors of defaulted consumer

debt it had the resources, access to typical account level credit card documents as well

as the credit issuer, and the law to make a determination that an account stated claim is

not something that occurs as a matter of routine practice on credit card accounts that

default. At the most elementary level PRA could have had one of its employees with a credit card account call up or send a letter to a credit card issuer that claimed to state the account and see what would happen.

Harden v. Autovest, L.L.C., No. 1:15-cv-34, 2016 U.S. Dist. LEXIS 164728, at *5 (W.D. Mich. Nov. 30, 2016) is the most recent court to reject a mistake of state law defense and that reasoning supports the denial of a BFE state law defense. Allowing such a defense would encourage PRA to develop other esoteric collection practices. In the context of state law errors the harm to the consumer is substantial. Nyberg's defense cost over $50,000 in legal expenses to rebut PRA's theory. Such a defense puts the risk of private enforcement of the FDCPA on the consumer and lets PRA off the hook until the consumer established an appellate level decision that controls the issue. Consumers who owe small debts are typically sued because they can't pay those debts. It is improbably that they will be able to retain counsel and establish the correct resolution of the claim.

## CONCLUSION

For all of the above reasons, plaintiff requests that the Court enter Summary Judgment in his favor that plaintiff has violated the FDCPA in one or all of the ways alleged in plaintiff's complaint.

Dated this December 12, 2016

/s/ Bret Knewtson
Bret Knewtson, OSB 03355

Service by ECF:
Mark G. Passannante   markpassannante@msn.com
Robert E. Sabido   rsabido@cosgravelaw.com, jsouth@cosgravelaw.com
Dale R. Nordyke   drnordyke@portfoliorecovery.com, nasearles@portfoliorecovery.com, slgomez@portfoliorecovery.com
Jeffrey A. Topor   jtopor@snllp.com, paralegal@snllp.com